ROGERS, Justice.
 

 Plaintiff is a corporation engaged in the business of purchasing notes secured by vendor’s lien and chattel mortgage on motor ve: hides. The notes are purchased mainly from dealers in such vehicles. One of those dealers was another corporation known as the “Á. J. Motor Company, Inc.,” of which A. J. Nelson, Mrs. Ethel Nelson, his wife, Mrs. Eleanor Chamberlaine, his daughter, and R. T. McConnell were the officers and directors. The A. J. Motor Company, Inc., was adjudged a bankrupt on December 29, 1930, and on January 25,1932, plaintiff filed this suit against its former officers and directors for the recovery of damages in the sum of $4,413.80 for certain alleged fraudulent acts perpetrated upon plaintiff by the defunct corporation through its officers and directors and with their knowledge and consent
 

 Defendants filed, among other pleas, an exception of no cause of action, which was sustained by the court below, and plaintiff has appealed from the judgment
 

 Plaintiff alleges that in the course of its business it purchased a number of chattel mortgage notes from the A. J. Motor Company, Inc., which verbally agreed to furnish
 
 *290
 
 with each transaction a purchaser’s statement containing in great detail certain information concerning the purchaser, and an attached statement termed “Dealer’s Remarks,” containing the motor company’s guaranty that certain required information relative to the vehicle and to the transaction was .to the best of its knowledge true and correct.
 

 That plaintiff relied on the statements and guaranties of the motor company in the transactions had with that company, and that in nineteen transactions which are enumerated in the petition the statements of the motor company were false and fraudulent and made with the intent of defrauding plaintiff; and that all the defendants were active in the business of the motor company and familiar with the details of these transactions.
 

 Plaintiff alleges that in certain instances the information set forth in the dealer’s remarks as to the selling price of the vehicle was incorrectly stated; in other instances the down payment was overstated, or stated to have been paid in cash, when no cash passed, or a trade in value was stated as cash paid; that in another instance a used ear was described as a new ear; and, further, that in some cases the motor company accepted the purchaser’s unsecured notes and represented them as cash payments.
 

 Plaintiff shows that a number of payments were made by the makers of the notes held by it, but that in the course of time these payments ceased and plaintiff with the consent of the owners repossessed the vehicles covered by the chattel mortgages and sold them at private sales, applying the proceeds thereof to the expenses of repossession and the balance due on the mortgage notes. The petition reveals that in one instance — -the McCoy transaction — in which plaintiff alleges a loss of $323.95, the automobile on which plaintiff held a chattel mortgage was seized by the owner’s landlord, and that in the litigation which ensued between the parties the lessor’s lien was held to prime plaintiff’s chattel mortgage. Subsequently, McCoy became a bankrupt and plaintiff was unable to recover on his note.
 

 Plaintiff would have it appear, from the allegations of its petition, that in purchasing the chattel mortgage notes in question it relied solely on the information contained in the so-called “Dealer’s Remarks” relative to the character of the vehicles and the particulars of their sale, disregarding entirely the information contained in the purchasers’ statements which it exacted and the security value of the motor vehicles themselves. But plaintiff does not allege that the vehicles were not properly described and that their serial and motor numbers - were not correctly set forth. Nor does plaintiff claim that the notes and the chattel mortgages by which they were secured were invalid for want of consideration or because they were fraudulently issued.
 

 The purchasers’ statements which plaintiff exacted before it purchased the chattel mortgage notes contained, among other items, full particulars as to the purchasers’ employments, sources of revenue, wages or salaries, credit standing, and financial ability to discharge their obligations. Presumably plaintiff caused this information to be carefully
 
 *292
 
 checked and the motor vehicles mortgaged to
 
 i
 
 be carefully inspected before it purchased the chattel mortgage notes. If it failed to do those things, which we can hardly believe to be possible, it failed to exercise the care and prudence that would seem to be required of persons, firms, or corporations engaged in a business involving such great financial risks.
 

 Plaintiff is not suing the A. J. Motor Company, Inc., to rescind the contracts on the ground of fraud. On the contrary, plaintiff’s petition shows that subsequent to its purchase of the chattel mortgage notes it dealt directly with the makers of the notes, receiving from them payments on account of the notes, and on their defaults amicably arranged with them for the repossession of the mortgaged vehicles. And the ' repossessed vehicles were thereafter sold by plaintiff at private sales.
 

 After deducting the total of the payments made by the makers of the chattel mortgage notes and the proceeds derived from the private sales of the repossessed vehicles from the face of the chattel mortgage notes, plaintiff sues defendants for the difference, plus the total loss on the McCoy note, as heretofore stated, due to the priming of the chattel mortgage by the lessor’s lien, as the damages resulting from the alleged fraudulent misstatements contained in the “Dealer’s Remarks.”
 

 None of the chattel mortgage notes mentioned in plaintiff’s petition were indorsed by the A. J. Motor Company, Inc., nor by the defendants, either personally or as officers of the motor company.
 

 Plaintiff, in its somewhat belated suit, alleges that it was verbally agreed with the A. J. Motor Company, Inc., that dealers’ statements would be furnished with each transaction. But plaintiff’s petition fails to show who acted for it and who acted for the motor company, and whether the person acting for the motor company was authorized to do so. Plaintiff does not allege that the verbal agreement in question was made with the defendants or that they acted for .the motor company in the alleged transaction.
 

 Although plaintiff makes the general allegation that the A. J. Motor Company, Inc., perpetrated a fraud upon it, with the knowledge and consent of the defendants, plaintiff does not show that any of the defendants took part in the alleged fraud, nor does plaintiff set forth any facts to show that defendants consented to the alleged fraud or had any personal knowledge thereof.
 

 Plaintiff mentions the face value of the chattel mortgage notes, but it does not show the actual price it paid for the notes. Nor does plaintiff show that the security value of the mortgaged motor vehicles was not what it was represented to be at the time the chattel mortgages were executed.
 

 Plaintiff does show that no legal action was taken against the makers of the chattel mortgage notes when they defaulted on their obligations. Although at that time plaintiff was in a position to discover the alleged fraud perpetrated by the A. J. Motor Company, Inc., plaintiff, without protest, complaint, or notice to the motor company or to the defendants, amicably adjusted their claims with the debtors, receiving the mortgaged motor vehicles in full discharge of their claims. Plaintiff by its action has destroyed whatever rights the motor company
 
 *294
 
 might have to obtain deficiency judgments against the makers of the notes and has otherwise rendered it impossible to place the parties in the situation they occupied prior to plaintiff’s purchase of the chattel mortgage notes.
 

 For the reasons assigned, the judgment appealed from is affirmed.